UNITED STATES OF AMERICA
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

BOBBY COX; COX-LANE, LLC          CIVIL ACTION NO.:
JEROME BELLARD; DOMINIC
BELLARD; SCOTT LEJEUNE;
JERRY BLACKMON; KIMBERLY
BLACKMON; BLACKMON QUARTER
HORSES, LLC; DAN WASSERBECK;          JUDGE:
JESUS MANUEL CARBAJAL ORTEGA;
ALONZO ELIZONDO; and
KENNETH WARD

VERSUS

MANZANOLA FEEDS, LLC          MAGISTRATE JUDGE:

---

## COMPLAINT AND JURY DEMAND

---

The complaint of **Bobby Cox; Cox-Lane, LLC; Jerome Bellard; Dominic Bellard; Scott Lejeune; Jerry Blackmon; Kimberly Blackmon; Blackmon Quarter Horses, LLC; Dan Wasserbeck; Jesus Manuel Carbajal Ortega; Alonzo Elizondo; and Kenneth Ward**, who respectfully represent:

### I.  JURISDICTION AND VENUE

1.

This is a controversy between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.   Defendant, **Manzanola Feeds, LLC (hereinafter Manzanola Feeds),** carries on or transacts business within the State of Louisiana.

2.

This Honorable Court has diversity jurisdiction of this matter pursuant to 28 U.S.C. § 1332.   Venue in this case is proper in the United States District Court, Western District of Louisiana because a substantial part of the events or omissions giving rise to the claims occurred, and where the incidents, wrongful conduct and/or the damages occurred and were sustained.

3.

At all times relevant hereto, this Honorable Court has personal jurisdiction over defendant, **Manzanola Feeds**, because said defendant has derived substantial revenue from goods and products used in the State of Louisiana, including but not limited to the Western District of Louisiana.   Additionally, **Manzanola Feeds** has purposefully directed their transactions towards Louisiana and/or have the requisite minimum contacts with Louisiana to satisfy any statutory or constitutional requirements for personal jurisdiction.

## II.   INTRODUCTION

4.

On November 14, 2022, Cox Stallion Station purchased 960 bags of Top of the Rockies alfalfa hay cubes from **Manzanola Feeds, LLC**, totaling $13,748.   Subsequently, in early December 2022, multiple horses stabled at Cox Stallion Station suffered acute illnesses after consuming the alfalfa hay cubes, leading to the death of 20 horses and permanent illness in 5 other horses.   Subsequent investigations by veterinarians from Louisiana State University (LSU) and the FDA confirmed the presence of *Clostridium botulinum* (Equine Botulism) in the affected horses.   In response, **Manzanola Feeds,**

**LLC**, initiated a voluntary recall of its alfalfa hay cubes product on December 12, 2022, due to a multi-state foodborne outbreak.   The events that have given rise to the claims asserted herein are subject to the Louisiana Products Liability Act (LPLA).

### III.   PARTIES

5.

Claimant, **Bobby Cox**, is an adult citizen of Fort Worth, Tarrant County, Texas. Bobby Cox holds 100% ownership interest in the following horses:

    a. **2023 Teller Jazz MRL x JD 662**
       Infection Date:   12.03.2022
       Deceased Date:   12.03.2022

    b. **2023 Caydence x FTB 739**
       Infection Date:   12.06.22
       Deceased Date:   12.07.2022

    c. **2023 Thriving Ivory x MTE 84**
       Infection Date:    12.10.2022
       Deceased Date:    12.12.2022

    d. **2023 Runaway Ivory x JD 1021**
       Infection Date:   12.11.2022
       Deceased Date:   12.12.2022

    e. **Sepphora**
       Infection Date: 12.11.2022
       Deceased Date: 12.15.2022

    f. **2023 Louisiana Jewels x FTB**
       Infection Date:   12.13.2022
       Deceased Date:   12.14.2022

    g. **Irish Ayes**
       Infection Date:   12.13.2022 – Permanently Injured

    h. **Lethal Candy**
       Infection Date:   12.13.2022 – Permanently Injured

**i. Runaway Ivory**
Infection Date:   12.13.2022 – Permanently Injured

6.

Claimant, **Cox-Lane, LLC**, is a Texas corporation.   Cox-Lane, LLC holds 100%

ownership interest in the following horses:

**a. Apollitical Regard**
Infection Date:   12.12.2022 – Permanently Injured

**b. 2023 Madam Of Fire MV x IJ 1152**
Infection Date:   12.13.2022
Deceased Date:   12.14.2022

7.

Claimant, **Jerome Bellard**, is an adult citizen of Kaplan, Vermillion Parish,

Louisiana.   Jerome Bellard holds a 33.4% interest in the following horses:

**a. Worm Burner**
Infection Date:   12.04.2022
Deceased Date:   12.05.2022

**b. High Cheddar**
Infection Date:   12.04.2022
Deceased Date:   12.04.2022

**c. Allizoom**
Infection Date:   12.11.2022
Deceased Date:   12.15.2022

8.

Claimant, **Dominic Bellard**, is an adult citizen of Church Point, Acadia Parish,

Louisiana.   Dominic Bellard holds a 33.3% interest in the following horses:

**a. Worm Burner**
Infection Date:   12.04.2022
Deceased Date:   12.05.2022

**b. High Cheddar**
Infection Date:   12.04.2022
Deceased Date:   12.04.2022

**c. Allizoom**
Infection Date:   12.11.2022
Deceased Date:   12.15.2022

9.

Claimant, **Scott Lejeune**, is an adult citizen of Church Point, Acadia Parish, Louisiana.   Scott Lejeune holds a 33.3% ownership interest in the following horses:

**a. Worm Burner**
Infection Date:   12.04.2022
Deceased Date:   12.05.2022

**b. High Cheddar**
Infection Date:   12.04.2022
Deceased Date:   12.04.2022

**c. Allizoom**
Infection Date:   12.11.2022
Deceased Date:   12.15.2022

10.

Claimant, **Jerry Blackmon**, is an adult citizen of Ganado, Jackson County, Texas. Jerry Blackmon holds 100% ownership interest in the following horse:

**a. Show Me Girl**
Infection Date:   12.05.2022
Deceased Date:   12.06.2022

11.

Claimant, **Kimberly Blackmon**, is an adult citizen of Ganado, Jackson County, Texas. Kimberly Blackmon holds 100% ownership interest in the following horse:

5

    **a. Rootbeer and Toast**
    Infection Date:   12.12.2022
    Deceased Date:   12.12.2022

12.

Claimant, **Blackmon Quarter Horses, LLC**, is a Delaware Corporation.

Blackmon Quarter Horses, LLC holds 100% ownership interest in the following horses:

    **a. Diva in Disguise**
    Infection Date:   12.12.2022
    Deceased Date:   12.13.2022

    **b. MCM Fast Dashin Blue**
    Infection Date:   12.06.2022
    Deceased Date:   12.10.2022

    **c. Politics N Prizes**
    Infection Date:   12.11.2022
    Deceased Date:   12.13.2022

    d. **Proud Soul**
    Infection Date:   12.06.2022
    Deceased Date:   12.06.2022

    **e. Celtic Queen**
    Infection Date:   12.06.2022
    Deceased Date:   12.08.2022

13.

Claimant, **Dan Wasserbeck**, is an adult citizen of Marion, Marion County, Ohio.

Dan Wasserbeck holds 100% ownership interest in the following horse:

    **a. Triple Six Center**
    Infection Date:   12.13.2022
    Deceased Date:   12.21.2022

14.

Claimant, **Jesus Manuel Carbajal Ortega**, is an adult citizen of Iowa City, Johnson

County, Iowa.   Jesus Manuel Carbajal Ortega holds 100% ownership interest in the

following horse:

**a. She Can Dash Fast**
   Infection Date:   12.03.2022
   Deceased Date:   12.04.2022

15.

Claimant, **Alonzo Elizondo**, is an adult citizen of Elsa, Hidalgo County, Texas.

Alonza Elizondo holds 100% ownership interest in the following horse:

**a. Blue Eye Dynasty**
   Infection Date:   12.12.2022
   Deceased Date:   12.13.2022

16.

Claimant, **Kenneth Ward**, is an adult citizen of Falkville, Morgan County,

Alabama.   Kenneth Ward holds 100% ownership interest in the following horse:

**a. Ivory Rose**
   Infection Date:   12.13.2022 – Permanently Injured

17.

Defendant, **Manzanola Feeds, LLC**, is a foreign limited liability company

organized under the laws of Colorado by its member, Melvin Neugebauer.   Based upon

information and belief, defendant, **Manzanola Feeds, LLC**, does interstate and internet

business under the business name **Manzanola Feeds, LLC**, including distribution of its

products, through the United States and into Louisiana.   Defendant, **Manzanola Feeds,**

**LLC**, does not maintain a registered agent in the State of Louisiana.   Therefore, defendant,

**Manzanola Feeds, LLC**, may be served through its agent for service of process, Melvin Neugebauer, 108 West First Street, Manzanola, Colorado 81058.

18.

At all times relevant hereto, defendant, **Manzanola Feeds**, purposely directed and established significant contacts in Louisiana, has carried-out, and continues to carry-out continuous and systematic business activities in Louisiana.

19.

At all times relevant hereto, defendant, **Manzanola Feeds**, has also purposely availed itself of the privilege of conducting business activities in the State of Louisiana.

## IV. FACTUAL HISTORY

20.

At all times material hereto, the defendant, **Manzanola Feeds**, manufactured, sold and distributed a horse feed product known as Top of the Rockies.   This product consists of alfalfa hay cubes intended to be used as feed for horses.

21.

At all times material hereto, defendant, **Manzanola Feeds'**, Top of the Rockies alfalfa cubes product was found to be contaminated with Equine Botulism caused by the presence of *Clostridium botulinum* which is a gram positive, spore forming, obligate anaerobe.   This organism is capable of producing toxins that are considered some of the most potent known to humans and animals.

22.

Upon information and belief, Equine Botulism produced by the organism is a dangerous neurotoxin called botulism neurotoxin (BoNT) that binds to pre-synaptic nerve terminals and prevents the release of acetylcholine, which is a neurotransmitter that makes the nerves function.

23.

Upon information and belief, Equine Botulism prevents the release of this neurotransmitter which in turn causes progressive paralysis to occur in affected muscles and the binding of this toxin to the nerve terminal is *irreversible,* meaning that there is no antidote once it is bound.

24.

Upon information and belief, horses can contract the irreversible botulism disease by ingestion of a pre-formed toxin associated with contamination by animal carcasses or decaying organic matter.   Horses are among the most sensitive animals to botulism and as a result, exposure to microscopic amounts of toxin often lead to lethal results.

25.

Upon information and belief, in early December 2022, horses that were stabled at Cox Stallion Station located in Kaplan, Louisiana began showing signs and symptoms of an acute illness.   Claimant, Bobby Cox, is the owner of the Cox Stallion Station facility.

26.

Upon information and belief, the horses stabled at Cox Stallion Station were initially evaluated by local veterinarians and had to be emergently transported to the Louisiana State

University (LSU) Veterinary Medical Equine Hospital located in Baton Rouge, Louisiana

due to the rapid health decline of the incident horses.

27.

Upon information and belief, between December 3, 2022 through December 13, 2022, a total of sixteen (16) horses owned by claimants herein presented to the LSU Vet Equine Hospital for further diagnosis and treatment from the acute effects of Equine Botulism.

28.

Upon information and belief, all horses owned by claimants herein presented to the LSU hospital with a very rapid onset (within several hours) and were found to be consistent with botulism intoxication.  The acute and rapid onset of symptoms included: *muscle fasciculations, progressive weakness and/or inability to stand, decreased tail tone, dilated pupils and decreased tongue tone.*

29.

Upon information and belief, in early December, 2022, the incident horses at the LSU hospital underwent a battery of diagnostic testing (both ante-mortem and post-mortem).

30.

Upon information and belief, in early December 2022, the LSU veterinarians concluded that there was a potential feed contamination event ongoing.  Based on this preliminary diagnosis, the Feed Program Director at the Office of Animal Health & Safety

in the Louisiana Department of Agriculture and Forestry (LDAF) was notified immediately.

31.

Upon information and belief, the Program Director for the LDAF performed an initial on-site evaluation at Cox Stallion Station on or about December 9, 2022.

32.

At all times material hereto, claimant herein, Jerome Bellard was the Farm Manager at Cox Stallion Station.   Jerome Bellard also began visually inspecting the Top of the Rockies alfalfa hay cubes.   During the visual inspection, he found alfalfa hay cubes that had animal remnants contained within them.

33.

Upon information and belief, on or about December 10, 2022, Jerome Bellard spoke with a farm manager in New Mexico that was experiencing a similar outbreak on their property.   Based on this information, veterinarians from LSU contacted Dr. Warren Franklin who is a veterinarian in New Mexico that was treating the horses located there. The two veterinarians concluded that the only common product they were able to identify between the Louisiana farm and the New Mexico farm was the Top of the Rockies alfalfa hay cubes that was being fed to horses on both farms.

34.

At all times material hereto, Dr. Rose Baker, a board-certified veterinarian in large animal internal medicine and faculty member at LSU issued a causation letter detailing her professional medical opinion of the horses that were seen, evaluated and treated as part of

the outbreak of illness that occurred at Cox Stallion Station in Kaplan, Louisiana beginning in early December 2022.

35.

At all times material hereto, Dr. Rose Baker diagnosed claimants' horses at issue herein with Equine Botulism following extensive diagnostic testing.   Dr. Baker stated in her causation letter the following: "In my professional opinion as a board-certified specialist in medical diseases of large animals, these horses were affected with botulism, and I diagnosed them as such.   This was based on: 1) their clinical signs consistent with botulism; 2) the lack of significant post-mortem findings that explained other reasonable possible causes of the disease; 3) the negative results from the expansive battery of diagnostic testing that was performed on the horses that presented; and 4) the positive results of clearly contaminated feed being fed on the property."

36.

Upon information and belief, on August 9, 2023, Dr. Eddie Cramer, a Louisiana veterinarian associated with Acadiana Equine Hospital located in Opelousas, Louisiana, issued a medical causation letter detailing his involvement with the initial treatment and subsequent euthanasia of multiple horses.   Dr. Cramer was involved with the euthanasia of the following horses at Cox Stallion Station from December 6, 2022 to December 14, 2022:

      a.   Proud Soul;
      b.   Celtic Queen;
      c.   Rootbeer and Toast;
      d.   Blue Eye Dynasty;
      e.   Recipient Hip 84 (23 Thriving Ivory x Moonin the Eagle);
      f.   Recipient 1021 (23 Runaway Ivory x Jess Different);

    g.   Recipient 1152 (23 Madam Of Fire MV x Ivory James); and

    h.   Recipient (23 Louisiana Jewels x Freight Train 8)

37.

Upon information and belief, Dr. Eddie Cramer opined in his medical causation letter: "Each of these individuals developed acute onset of extreme weakness with severe muscle fasciculations.   Therapeutic interventions included administration of anti-inflammatory drugs, activated charcoal, and equine plasma transfusions, including Botulism anti-toxin.   In spite of these interventions, the clinical conditions of these individuals rapidly deteriorated resulting in flaccid paralysis and recumbency.   These horses were humanely euthanized due to the severity of suffering and a grave prognosis. In the case of each of these individual animals, their clinical signs were completely consistent with Botulism intoxication."

38.

Upon information and belief, LDAF personnel returned to the Cox Stallion Station property on December 10, 2022, to evaluate unopened/untampered bags containing Top of the Rockies alfalfa hay cubes.   Based on the information suggesting that a possible multi-state epizootic was ongoing, the LDAF alerted the U.S. Food and Drug Administration (FDA) to advise of same.

39.

Upon information and belief, pursuant to the complaints of a possible food contamination event, the FDA launched an investigation and emergency response protocol on December 12, 2022.

40.

Upon information and belief, the FDA conducted an inspection of the **Manzanola Feeds** manufacturing facility located at 33445 County Road 11, Manzanola, Colorado, between the dates of December 14, 2022, and February 1, 2023.   The FDA conducted these inspections as part of their investigation into a multi-state foodborne outbreak of *Clostridium botulinum* toxicosis that was implicated in approximately fifty-two (52) equine deaths and additional illnesses.

41.

Upon information and belief, the FDA took a sample of the Top of the Rockies alfalfa hay cubes collected by the LDAF from an unopened bag (FDA Sample 1210120), Lot 111422.   This sample was analyzed by the FDA.

42.

Upon information and belief, the FDA laboratory analysis *confirmed* the presence of pre-formed *Clostridium botulinum toxin Type C via a very sophisticated test titled mouse bioassay.* Additionally, the FDA confirmed the presence of animal hair in the incident product. *Clostridium botulinum* toxin Type C can cause serious adverse health consequences or death to equines and is known to be associated with ingestion of animal food containing animal carcasses contaminated with the toxin.[1] Also, the presence of *Clostridium botulinum* toxin Type C and animal hair causes it to be adulterated.[2]

---

[1] "Botulism in Horses" (https://www.merckvetmanual.com/horse-owners/disorders-affecting-multiple-body-systems-of-horses/botulism-in-horses)
[2] *See* Section 402(a)(1) of the Federal Fodd, Drug and Cosmetic Act (FC&C Act) [21 U.S.C. § 342(a)(1)]

43.

At all times material hereto, defendant, **Manzanola Feeds**, initiated a voluntary recall on December 12, 2022 of its Top of the Rockies hay cubes product.  The recall included Lots 111222, 111322, 111422, 111522 and 111622.[3]

44.

Upon information and belief, the FDA, during its investigation, found that the **Manzanola Feeds** facility is subject to the Current Good Manufacturing Practice (CGMP) Requirements found in 21 CFR Part 507, subparts A, B, and F.

45.

Upon information and belief, during the FDA inspection of the **Manzanola Feeds** facility, the investigators found evidence of significant violations of the Current Good Manufacturing Practice, Hazard Analysis, and Risk-Based Preventative Controls for Food for Animals regulation, Title 21, Code of Federal Regulations, Part 507 (21 CFR Part 507) which caused defendant's products to be deemed adulterated.[4]  The FDA notified **Manzanola Feeds** that introduction or delivery for introduction into interstate commerce of any food that is adulterated is a prohibited act.[5]   The FDA further informed **Manzanola Feed**s that it failed to comply with preventative control provisions and that defendant was in violation of 21 CFR Part 507 (located in subparts A, C, D, E and F of Part 507)[6]

---

[3] Manzanola Feeds is Recalling Certain Lots of Top of the Rockies Alfalfa Hay Cubes due to possible *Clostridium botulinum* Health Risk | FDA (https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/manzanola-feeds-recalling-certain-lots-top-rockies-alfalfa-cubes-due-possible-clostridium-botulinum#recall-announcement)
[4] *See* Section 402(a)(4) of the FD&C Act [21 U.S.C. § 342(a)(4)] and 21 CFR 507.1(a)(1)(ii)
[5] *See* Section 301(a) of the FD&C Act [21 U.S.C. § 331(a)]
[6] *See* Section 301(uu) of the FD&C Act [21 U.S.C. § 331(uu)

46.

Upon information and belief, pursuant to the FDA's inspection, defendant, **Manzanola Feeds**, was issued a Form FDA 483, Inspectional Observations (FDA 483).

47.

Upon information and belief, the FDA notified **Manzanola Feeds** that their manufacturing facility had significant violations of the CGMP Requirements.   The FDA found that **Manzanola Feeds** did not examine their raw materials and other ingredients in order to ensure that they are suitable for manufacturing and processing into animal food and were not handled under conditions that would protect against contamination and minimize deterioration as required by 21 CFR 507.25(b)(1).

48.

At all times material hereto, the FDA investigators observed **Manzanola Feeds** employees using alfalfa hay bales that were approximately 3 feet by 4 feet by 8 feet which means that there is significant internal volume of the alfalfa hay bales used in the Top of the Rockies incident product. The FDA found that **Manzanola Feeds** personnel's visual inspection of only the exterior of the alfalfa hay bales was inadequate to identify the presence of animal carcasses baled into hay that would render it unsuitable for manufacturing into animal food.   As a result, the foodborne illness of Equine Botulism could occur due to **Manzanola Feeds** limited visual inspection of the alfalfa hay bales at issue in this litigation.

49.

Upon information and belief, the FDA notified **Manzanola Feeds** that they were in violation of not implementing a written food safety plan, as required by 21 CFR 507.31(a).

50.

Upon information and belief, **Manzanola Feeds** personnel admitted to the FDA investigators during their inspection that they did not have a written food safety plan.

51.

Upon information and belief, **Manzanola Feeds** subsequently sent the FDA its proposed food safety plan.   The FDA advised **Manzanola Feeds** that their proposed food safety plan was inadequate.   The FDA further advised **Manzanola Feeds** that *Clostridium botulinum* is a *known or reasonably foreseeable hazard* for the type of animal food manufactured, processed, packed, and held at their facility.   The FDA also advised **Manzanola Feeds** that their written hazard analysis does not identify and evaluate any hazards associated with the animal food at its facility, as required by 21 CFR 507.33.[7]

## V. LIABILITY OF MANZANOLA FEEDS, LLC

52.

Defendant, **Manzanola Feeds**, was at all times relative to this suit, engaged in the business of designing, manufacturing, processing, assembling, marketing and/or placing into the stream of commerce the Top of the Rockies alfalfa hay cubes for sale to and use by members of the public. The Top of the Rockies alfalfa hay cubes were placed into the

---

[7] *See* FDA Warning Letter dated May 11, 2023 – https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/manzanola-feeds-llc-651534-05112023

stream of commerce by **Manzanola Feeds** and reached claimants without substantial change and was fed to the incident horses as directed.    The Top of the Rockies alfalfa hay cubes at issue were defective and unreasonably dangerous when the product entered into the stream of commerce and when used by claimants herein.

53.

Claimants hereby invoke, allege and assert the provisions of the Louisiana Products Liability Act (LPLA) La. R.S. 9:2800.51, et seq.

54.

At all times material hereto, defendant, **Manzanola Feeds**, is deemed to be a manufacturer under the Louisiana Products Liability Act (LPLA) pursuant to La. R.S. 9:2800.53(1).

55.

**Manzanola Feeds** owed a duty to those persons purchasing its products, including claimants herein, to exercise reasonable care, and to provide a reasonably safe product, free from defects which could cause unreasonable danger to unsuspecting horse owners such as claimants herein.

56.

**Manzanola Feeds** knew or should have known of the dangerous and potentially lethal effects that Equine Botulism can cause to horses due to defective feed such as the Top of the Rockies alfalfa hay cubes at issue in this litigation.

57.

**Manzanola Feeds** breached its duty to claimants herein by failing to design, assemble, manufacture, process, sell, supply, distribute and/or place into the stream of commerce a product free of defects to prevent the unknowing consumption of the contaminated horse feed at issue.

58.

Upon information and belief, **Manzanola Feeds** should have at all times pertinent and material hereto, knew or should have known of the unreasonably dangerous, defective characteristics, had it reasonably employed then-existing scientific and/or technical knowledge, reasonable testing and/or other reasonable and then accepted methods of quality assurance and/or quality control.

59.

Upon information and belief, the Top of the Rockies product manufactured by **Manzanola Feeds** was unreasonably dangerous due to an inadequate warning that, at the time the defective product left the **Manzanola Feed's** control, possessed a characteristic that *proximately caused* the untimely death of twenty (20) horses and seriously injured five (5) other horses owned by claimants herein.   Further, **Manzanola Feeds** failed to use reasonable care to provide an adequate warning of such characteristics and/or dangers to unsuspecting consumers, including claimants herein.

60.

At all times material hereto, The Top of the Rockies product was unreasonably dangerous in design, in that at the time the defective product left defendant's control, there

existed, upon information and belief, an *alternative design* that was capable of preventing Botulism in the claimants' horses, and the likelihood of causing the horses' deaths and injuries and the gravity of that harm outweighed the burden (if any) on defendant, **Manzanola Feeds**, and adopting such alternative design would have prevented the deadly adverse effects on the utility of the defective product at issue in this litigation.

61.

Defendant, **Manzanola Feeds**, knew, or in light of reasonably available scientific knowledge, should have known about the danger of contaminated feed that caused the damages for which claimants seek recovery herein.

62.

At all times material hereto, claimants did not know, nor had reason to know, at the time of the usage of the Top of the Rockies product in early December 2022, or at any time prior to its use, of the existence of the above-described defects in its alfalfa hay cubes product.

63.

At all times material hereto, the above-described defects caused the deaths and injuries of claimants' horses when they used said product in its intended and foreseeable manner, and in the manner recommended by defendant, **Manzanola Feeds**.

64.

Defendant, **Manzanola Feeds**, is therefore liable to claimants for any and all damages arising from their use of the defective product known and labeled as Top of the Rockies alfalfa hay cubes at issue in this litigation.

65.

At all times material hereto, and at the time of the deaths and injuries of claimants' horses, said claimants had put the Top of the Rockies product to *a reasonably anticipated use* as required by the Louisiana Product Liability Act, La. R.S. 9:2800.53 and La. R.S. 9:2800.54.

66.

At all times material hereto, the Top of the Rockies product manufactured, sold and distributed by **Manzanola Feeds** and used by claimants to feed their respective horses was unreasonably dangerous due to defects in construction and composition under La. R.S. 9:2800.55.   The Top of the Rockies product at issue clearly deviated in a material way from **Manzanola Feeds**' specifications or performance standards.   **Manzanola Feeds** would not have knowingly sold its alfalfa hay cubes that contained *Colistrium botulinum* to its customers.   Additionally, **Manzanola Feeds** would not have initiated a voluntary recall of the incident product due to the defective and contaminated alfalfa hay cubes if the recalled batches had been in compliance with its own manufacturing specifications or performance standards.

67.

At all times material hereto, the Top of the Rockies product manufactured and distributed by **Manzanola Feeds** and used by claimants on their horses in early December, 2022 was unreasonably dangerous and defective in design under La. R.S. 9:2800.56.

68.

At all times material hereto, claimants further allege that there existed reasonable and feasible *alternative designs* at the time of the deaths and injuries of claimants' horses. Clearly, the alternative design would be manufacturing hay cubes without said product containing dead animal carcasses, animal hair and decaying organic matter which would have prevented the Equine Botulism outbreak.   **Manzanola Feeds'** defective design of its alfalfa hay cubes was a direct cause of the incident horses contracting Equine Botulism.

69.

At all times material hereto, the Top of the Rockies product manufactured and distributed by **Manzanola Feeds** and used by claimants beginning in early December, 2022 was unreasonably dangerous due to inadequate warnings, as defined under La. R.S. 9:2800.57.   **Manzanola Feeds'** alfalfa hay cubes product undoubtedly possessed a characteristic that caused damage (animal carcasses, animal hair and decaying organic matter confirmed in testing).   It is further alleged that **Manzanola Feeds** failed to use reasonable care to provide any type of warning relating to its product being potentially contaminated with *Clostridium botulinum* in its Top of the Rockies hay cubes product and that the lack of any type of warning was a proximate cause of the deaths and injuries to the horses named herein.

70.

At all times material hereto, claimants assert that the Top of the Rockies product was unreasonably dangerous because of non-conformity to an express warranty made by **Manzanola Feeds**, pursuant to La. R.S. 9:2800.58.   This breach of express warranty

induced claimants herein to use the defective Top of the Rockies product, which said breach *proximately caused* the deaths and injuries of claimants' horses.

71.

At all times material hereto, claimants assert that the defects in construction and composition under La. R.S. 9:2800.55; in design under La. R.S. 9:2800.56; the inadequate warning under La. R.S. 9:2800.57 and because of non-conformity to an express warranty pursuant to La. R. S. 9:2800.58, existed at the time the Top of the Rockies product left the control of **Manzanola Feeds**.  **Manzanola Feeds** shipped 960 bags of its Top of the Rockies hay cubes product directly from its manufacturing facility in Manzanola, Colorado to Cox Stallion Station in Kaplan, Louisiana per the billing invoice dated November 14, 2022, bearing #15309 in the amount of $13,748.00.

72.

At all times material hereto, the Top of the Rockies product at issue was being used as intended.   The failure of the product during normal and foreseeable use is the type of occurrence that will not occur in the absence of a defect.    The only reasonable explanation for the failure of the incident product during normal use is that it was defective.    Claimants specifically allege the doctrine of *Res Ipsa Loquitur* and assert that the failure of this product would not occur in the absence of a defect.

73.

Claimants further allege that the Top of the Rockies product manufactured, distributed and sold by **Manzanola Feeds** which caused claimants' horses untimely deaths and injuries was negligently designed, manufactured, processed, assembled, sold,

distributed or otherwise placed in the public stream of commerce by defendant, **Manzanola Feeds**, in the following non-exclusive particulars, to-wit:

a. Providing misleading, false and deceptive statements in its promotional materials and packaging;

b. Failing to disclose that the incident product was manufactured through processes creating an unacceptably high risk of contamination;

c. Providing misleading information to the public about the nature and quality of its products;

d. Defendant knew that its manufacturing process created an unacceptably high risk of contamination and equine death;

e. Failing to warn its customers about its high-risk manufacturing methods;

f. Making deceptive representations and omissions with the intent to induce claimants herein to purchase the incident product;

g. Misrepresenting the nature, quality and ingredients of the incident product, and failed to adequately disclose the health risk of ingesting the incident product, which was false and misleading;

h. Failing to examine raw materials and other ingredients to ensure that they are suitable for manufacturing and processing into animal food and/or handled under conditions that will protect against contamination and minimize deterioration as required by 21 CFR 507.25(b)(1);

i. Failing to inspect the interior of the large hay bales prior to manufacturing said bales into alfalfa cubes which would identify the presence of animal carcasses baled into the hay rendering it unsuitable for manufacturing into animal food;

j. Failing to ensure that the animal feed introduced into interstate commerce was not adulterated;

k. Failing to implement a written food safety plan as required by 21 CFR 507.31(a);

l. Failing to implement a food safety plan that would identify *clostridium botulinum*;

m. Failing to register as a food facility pursuant to the requirements found in 21 CFR 507;

n.  Failing to have a written hazard analysis that would identify and evaluate any hazards associated with the animal food at defendant's facility and as required by 21 CFR 507.33;

o.  Failing to assess the severity of illness or injury to animals;

p.  Failing to comply with all requirements of Federal law and FDA regulations;

q.  Failing to have a food safety plan in place that would confirm the presence of *clostridium botulinum* toxin type C;

r.  Failing to comply with the preventative control provisions of 21 CFR Part 507, et seq;

s.  Providing a product which did not function as designed and which failed;

t.  Failing to adequately test the defective product;

u.  Failing to warn consumers of the hazards of the defective product;

v.  Manufacturing a product that was defectively designed;

w.  Manufacturing a product that was unreasonably dangerous;

x.  Designing, assembling, manufacturing, processing, selling, supplying and distributing its product, the risks of which outweigh its utility; and

y.  Any other acts of negligence which may be proved at the trial of this matter, all of which are in violation and contravention of the exercise of due care, prudence and the laws of the State of Louisiana, which are specifically incorporated herein as if and as though set out herein *in extenso*.

## VI. DAMAGES

### 74.

As a result of **Manzanola Feeds**' conduct, all claimants herein have suffered damages.   These include compensatory damages for the market value or replacement cost of the incident horses; loss of future income that would have been derived from breeding and money received through racing competitions; lost potential revenues; loss of stud fees;

breeders awards; veterinary expenses for treating the deceased and permanently ill horses; costs associated with caring for permanently ill horses; reimbursement of the purchase price of the incident product and any other incidental damages incurred by claimants herein as a result of the defective product at issue.

Claimants herein, are entitled to and do hereby request trial by jury on the causes of action alleged herein.

## VII. PRAYER

**WHEREFORE, CLAIMANTS, BOBBY COX; COX-LANE, LLC; JEROME BELLARD; DOMINIC BELLARD; SCOTT LEJEUNE; JERRY BLACKMON; KIMBERLY BLACKMON; BLACKMON QUARTER HORSES, LLC; DAN WASSERBECK; JESUS MANUEL CARBAJAL ORTEGA; ALONZO ELIZONDO; AND KENNETH WARD, PRAY**:

1. That there be judgment in favor of claimants, **Bobby Cox; Cox-Lane, LLC; Jerome Bellard; Dominic Bellard; Scott Lejeune; Jerry Blackmon; Kimberly Blackmon; Blackmon Quarter Horses, LLC; Dan Wasserbeck; Jesus Manuel Carbajal Ortega; Alonzo Elizondo; and Kenneth Ward**, and against the defendant, **Manzanola Feeds, LLC**, in the amount of $5,000,000.00, together with legal interest from date of judicial demand;

2. That claimants be awarded a trial by jury on all issues herein presented;

3. For service of process in due form against defendant; and

4. For all costs of these proceedings, including witness fees and expenses, and for all general and equitable relief.

RESPECTFULLY SUBMITTED:

**MORROW, MORROW, RYAN, BASSETT & HAIK**

*/s/ P. Craig Morrow*

P. CRAIG MORROW (#23536)
   Email:   craigm@mmrblaw.com
JAMES P. RYAN (#11560)
   Email:   jamesr@mmrblaw.com
Post Office Drawer 1787
Opelousas, LA 70571-1787
Telephone: (337) 948-4483
Fax: (337) 942-5234
***Attorneys for Claimants***